Good morning, your honors, please be seated. My name is Wayne Colton. I represent the Appellant Court of Appeals, and I'd like to begin with a brief explanation of the nature of the infringement and use of the specification to provide a brief and disputed phrase, processing according to frequency, and then with the Court's indulgence, I'd like to spend the majority of my time on what I believe to be the real issue in the case, the non-existence of disclaimer or prosecution of history, the stopper for analog techniques. With respect to evidence of infringement, I just want to point out to the Court I believe that some parts of the record where there is evidence of infringement may not have been clearly identified or put in the appendix, and I just want to point that out for you. As to the plaintiff's contention that there exists competent evidence of equivalence, there is the Dr. Mutter Declaration in the appendix at A. 1949 and 50, and that continues in the record at 1951, a little beyond that. There's also, of course, the plaintiff's opposition to the motion for summary judgment, the discussion in the record at 1931 through 39, and the citations to the declarations, including Dr. Mutter as well as Brian Eames. Also, I want to just comment briefly on – as to the question of whether or not the defendant's equipments do include analog filtering to the extent that may be important after this appeal. I note that on page 20 of their brief, they seem to back away from any admission that they do any filtering at all. I just draw the Court's attention to that. It's a means-plus-function claim. We've got to look at the specification. It talks about digital structure. Why aren't you limited to digital structure? Claim 20 does not include that limitation. I'm talking about Claim 1. You can see that in Claim 1, you are dealing with a digital structure. And statutory equivalence, yes, Your Honor. And so you have to hang your hopeful hat on statutory equivalence. Not with respect – with respect to Claim 1, that's correct. And with regard to Claim 1 and the idea of statutory equivalence, are you suggesting that an analog signal processor can be a statutory equivalent of a digital signal processor under 1126? Yes, Your Honor, we are. But in the specification, the patent goes through and articulates very clearly the large number of disadvantages in using an analog signal processor to complete this task, not least of which is continuous user would be required to monitor to look for frequency changes. So given the fact that you've clearly articulated why not to use an analog signal processor and the ways in which it is operating very differently, why don't we rule as a matter of law it's not an equivalent because you said it wasn't an equivalent in the patent? Your Honor, I don't believe that's what the patentee says in the patent. And I spent I think the majority of the principal group discussing that where the patentee discusses any disadvantage with respect to analog equivalence, the disadvantages have to do with more narrow claims. This is definitely a multifaceted invention. This is much like the Phillips case the court heard on Baum where there was a single embodiment given that suffices to enable every possible aspect of the invention. But the broader claims, for example, Claim 20, doesn't require that. And there's plenty of testimony. But you've appealed Claim 1 also. Yes, Your Honor. You suggested that the language of Claim 1 should be read as extending. And if I understood your answer to Judge Rader's question correctly, that you only claim the embodiment of digital signal processing as the mean structure disclosed in the specification, frequency filtering by digital means, and that you're claiming analog signal processing is equivalent there, too. And that's how it fits within a claim construction under 112. So are you conceding now that they're not equivalent and you keep wanting to go off to Claim 20? So I just want to make sure. No, Your Honor. I'm not. I'm being statutory. You look to the disclosed embodiment. The only disclosed embodiment is indeed a digital filter. Why are you adopting that position? It seems to me that that's not even the best position for your case. And tell me. Maybe I'm missing something. Why aren't you telling me that an analog signal processor, although discouraged, is actually disclosed and therefore you don't need to reach the issue of equivalence under 112-6? I thought that's what you were going to say when I walked in here, and you've actually said the exact opposite. So why is that? In fairness, I don't believe that to be the case, Your Honor. Okay, so you don't think you've disclosed an analog signal processor as a structure? I think there's discussion of an analog signal processor. No, but it makes my job easier. If we're looking at both claims and we're going to read the specification to understand the meaning of those claims, why shouldn't I be persuaded by this language in column 2, line 45, that it's an object of the present invention to provide a pipe tester that employs digital signal processing? I don't have. Why digital is emphasized right there as the object of your entire invention. Your Honor, I'm working from recollection at this point, but I believe, as was pointed out in the principle brief, it says digital signal processing for particular reasons, and those particular reasons correspond to the narrower claims, which are dependent upon claims following the analog to digital. But I'm focusing in on the language now that you're characterizing your entire invention as digital. It's an object of the entire invention. Entire isn't here, but present invention is what it says to employ digital signal processing. Your Honor, I think that's an unfairly restrictive reading of what that paragraph says. That's what Judge Rastani focused in, though, on that, among other things, in the specification. I think it's apparent that Judge Rastani was perhaps influenced by the amount of times that digital was discussed and that analog was perhaps discussed as being disadvantageous for the narrow aspects of the invention and did not differentiate between them. The invention, in fairness, there are 33 separate inventions in this application, and wherever the patentee discusses any disadvantage of analog techniques, those disadvantages are discussed in specific reference to something that's claimed in the more narrow, admittedly digital aspects. And I take you to another place that I'd like you to address, and this is right at the outset when you say that more particularly, but not by way of limitation, your invention is a method, an apparatus that employs digital signal processing. Once again, you're focusing in on digital. What credibility should we give to your kind of passing comment that that's not supposed to be a limitation? Again, I'm working from… Well, this is your patent, and you're right. I understand. I didn't write the patent, but certainly I recall the principle brief, and you must read the paragraph in its entirety. Well, the paragraph focuses in again on digital signal processing. There's no mention of analog. Analog is later disclaimed as being inferior technology. But I'm wondering what weight you would urge us to give to this passing not by way of limitation phrase. You want us to put great weight on that, I presume. Well, of course, John. I mean they're discussing parts of the invention. There are certain embodiments of the invention definitely are digital in nature. As soon as you read the entire specification, it dwells over and over again on digital processing as being superior to analog, as my colleague was pointing out earlier. I think once you get into especially the detailed description of the embodiment, the word invention is used one time. And the introduction of the detailed description of the preferred embodiment says it's a preferred embodiment. This is a way to do it. And everywhere else they say is in this particular implementation of the invention, we use this digital. And it makes sense in an invention this complicated not to write multiple preferred embodiments or not to satisfy the enablement description requirement in two different ways. In this modern world, isn't the digital analog distinction a pretty clear one? And haven't you pretty clearly identified your invention with one wing of that pretty significant dichotomy? If one wants to do every aspect of the invention right down to Claim 33, it must be done in an embodiment that is digital in nature. It is not necessary to do that in order to practice the invention as claimed in Claim 20. And certainly that would be an equivalent in our position under Claim 1 absent some disclaiming. I was going to move to another area. I was going to go to prosecution history. I was too. Could you go to prosecution history? I certainly could. In particular, do you have the appendix with you there? I do. You might not get that because there's specific language that I at least was interested in having your response to. I think that's part of the problem. You might want to look at the appendix. Oh, I'm sorry. I'm looking at page 1175 through 1176 in the appendix. And I wonder if you could help us with the languages. So at the bottom of 1175, distinguishing foul and saying it does not perform digital signal processing. And then again on 1176, the first paragraph and then the second paragraph, it says that, sort of rhetorically, an applicant respectfully asks the examiner, where in foul is it clutter suggested to digitally signal process according to frequency? Why don't those constitute disclaimers of analog? Certainly, this is at least confusion and this at least should be a reasonable competitor cause to investigate this further. And one might think that there might be some disclaimer in here. I point out before we get to that language that the express ground for traversal given on 1124 is that the applicant traverses on the basis that foul or analog did not disclose, teacher suggests. 1174? 1174. Yes, sir. Introductory paragraph. The processing of signals according to frequency of classified signals by type of irregularities in the parent file. It's originally the case that one would distinguish a prior reference on several different grounds. But if those are presented as independent grounds, we generally take them as independent disclaimers. But it shouldn't be a disclaimer. The problem we have here, Your Honor, is that the applicant discusses, again, multiple claims. The rejection of 33 claims is addressed by the patentee in this particular case in three pages and really about three minutes. There's 120. I guess those are still 120 in the ultimate patent. Yes, Your Honor. It's specifically called out at the bottom of page 175 as being, in effect, not subject to foul or by virtue of the immediate preceding sentence, which refers to the digital analog. Yes, Your Honor. And the problem is in preceding that particular sentence, again, there's an argument that makes no mention of digital. And, again, this argument says the claim invention frequency processes induce magnetic field data. And then we have this troubling language again in the argument, utilizing. So now he's saying how he did it. And one must look at it. This argument is saying what they do. But then it also says how they do it and why they do it. And the argument is drawn to a group of claims, including claims 2, 7, 15, 18, 25, and 32, which, in my opinion, probably are digital. In addition to 120. Because of further limitations in addition to claims 120. You're into your rebuttal time. Do you want to say something to that?  This gives us cause to think there might be some disclaimer in there. Cyber tells us that we shouldn't just be looking at this. Cyber tells us to look at the context of the arguments. Context of the arguments certainly would include the multiplicity of the claims that are there. But also one must look at foul. And this is very important. Foul does not disclose filtering. Foul does disclose digital techniques. Fowler is completely disclosure of digital techniques. Taking a signal from hall effect sensors, converting it to digital, processing it according to frequency. I'm sorry, not processing according to frequency. Computer processing it. And if it's not the frequency processing, if it's digital, that distinguishes foul. And reasonable competitors shouldn't be investigating this. If it's digital, if Fowler has the frequency processing. Digital doesn't distinguish foul. Fowler has digital techniques in it. What Fowler lacks is signal processing. I'll reserve my 29 seconds. Okay. Thank you very much. Good morning, Your Honor. My name is Ken Maddox, and I represent the Atholete Nutek Systems Incorporated. I think the court has already honed in on where the major dispute is and where I disagree with the position of the appellant. The line was right at the outset of the patent. It says we shouldn't look at digital processing by way of limitation. Do you take that literally? I don't believe so, Your Honor, because I think what you would end up doing is creating a magic phrase that would end up in the beginning of all patents. I don't mean what I'm about to say is the literal or the figurative translation of what they say here. So I wouldn't put very little weight on that because of the way they go on. Well, but they seem to, with that language, be trying to embrace more than just digital processing. If they do, I don't believe they get the job accomplished because they then hone in on digital filtering throughout the specification and in response A, which you referred to in the Exhibits 1174 and on. So I think when you start to review the patent, starting with Column 1, 41 through 46, Column 2, 11 through 13, Column 2, 13 to 16, Column 2, 46 to 52, Column 13, 56 to 58, these are all references that we're talking specifically about digital signal processing. What does this device do? What does this invention do? It uses digital signal processing to classify by frequency, digital signal processing by frequency, to classify two classes or categories of defects that you can find in oil field pipe. One being flaws and the other being wall loss. The art before it simply goes to using analog methods to try to find these flaws, and they don't do it in real time. That's the inventive matter here, and that's what the inventor's talking about. Now, let me mention as an aside that Mr. Colton several times referred to competitors, a reasonable competitor. These are competitors who are litigating this. And I would suggest to the court that when a competitor looks at this patent and looks at this record, he's left with the thought that what's being claimed here is digital signal processing. From one end of the patent to the other, that's what's being talked about here. Not quite to the end of the patent, because the claims, though, at least one. Right. True enough. True enough. It struck me that the way that the process is described in the specification is digital filtering, frequency filtering, and the way it's described in Claim 1 is frequency filtering. It almost conspicuously omits the word digital. It is interesting that he doesn't use the word in the claim itself that is in the specification. Sometimes. And you don't separate the specification and the prosecution history out from the claims. They all work together. Well, the question of this patent is dealing with the preferred embodiment, which is digital. Correct. And so the majority of the recitations from the specification you just gave us suggested that the preferred embodiment would be digital. That wouldn't necessarily limit the claim, which could be broader. True enough, but then when you look at response A, followed by the patent B, he very clearly hones in on digital. He's using digital to get past— In the prosecution history. In the prosecution history, starting at 1174. Now in the third full paragraph, where he suggests that Fowler does not disclose teacher suggested processing signals, he doesn't say digital. He just says processing signals. He's quoting his own claim language there. But then he goes on and talks about digital. I'm looking on page 1175 toward the bottom of the claim. Frequency processes induced magnetic field data utilizing digital signal processing techniques. He's using that argument to get over Fowler. What do you perceive to be the advance in the art that this patent represents? The advance is to take digital signal filtering and frequency. You can then find these in real time. Up until this time, you could not inspect a pipe in real time. Now I think if I ask that same question of Mr. Colton, he's going to say, yes, the signal processing part of that's correct, but why does it have to be digital? Because prior art would have done it analog and was not able to do it in real time. I think his argument is that Fowler didn't do the signal processing. It may have done some digital, some analog, but it didn't do the signal processing. Fowler did a comparison, if you will, setting a baseline and then checking the pipe and then made a comparison between baseline and the signals that were generated by using the Fowler mechanism. It did not do frequency filtering, I take it. I don't believe it did. Mr. Colton's last point, I think, when he was arguing was that you have to read this passage that we've been focusing on to distinguish Fowler on the ground, that Fowler does not use digital processing to conduct frequency filtering. Reading it together, that's a distinction which doesn't rely solely and expressively on digital versus analog. Except, Your Honor, he does use the word digital there, and he didn't have to. That's true, but if I say I don't have a green bicycle with plastic rims, that doesn't mean I don't have a green bicycle. He's using one sentence in which he's talking about two different things. What do you think we should look to to try to determine whether he's disclaimed both of those features of that sentence? I would look at the entirety of the response, not just the one sentence. I think we always get in trouble when we focus in on just one sentence or just one piece of the puzzle. But I think when you look at it overall, it's clear he's disclaimed analog and focused on digital. His question, where in Fowler is it suggested to digitally signal process according to frequency? Either the induced magnetic field or what was originally there. I'm signing page 1176 there. Now, one of the other things that has come up, I think, is that we have this, like much of law, this intention between the patentee's rights and the public's rights to know. And just as we would take a contract and construe it most strongly against the person who wrote it, here I think we have to look at this with a critical eye toward the person who could control the language used in their patent and in their response to the examiner. I think for him, for example, one of the things he cites in his very opening, Mr. Colton mentioned the Edens Declaration. Well, Mr. Edens is one of the inventors. And there is, as you know, certainly case law that says we look with a skeptical eye toward declarations of inventors. They do have, as they say, a dog in that fight. So what I'm suggesting here is that the competitor, the public, ought to be able to read this document and have some reasonable idea of what's being talked about. And I'd suggest to the court that what we're talking about here is the digital signal processing by frequency. Now, you'll notice also, for example, in Figure 9, it shows the implementation of digital filters. We've already talked about the argument in Response A. We've talked about the advantages. He spends a lot of time in the very early part of his patent talking about the disadvantages of analog systems and how his is a superior system to that. Well, what makes it superior? It's the implementation of digital signal processing. You'll notice that the three arguments which the parties had agreed on, that one, I would point out to the court, there's no communication on the accused device between one signal and the other. His is basically directed to one signal that's split out into two. There's no dispute that we're not talking about neural infringement here. It's only talking about by equivalence. As you know, this is argument-based establishment that we're talking about here and what Judge Rastan focused on. Here, it's so different between what they've disclosed in this patent and what they say their patent is and what the accused device does. We think that because they show flaws in the prior art, they identify and criticize analog. They show that it's significantly inferior under Schwarm versus Putzmeister and beside that case in this case, the court decided. I think they meet those tests to say that there has been a disclaimer of this, both for one and for 20. In the case of the prosecution history of Stompo, it has to be clear and unequivocal. I think it's there. I think that disclaimer is there. I don't think there's anything inconsistent in this patent between what he argues in response A and what he says in the patent. And I think this court has to look at it that this patentee who comes before you was in charge of writing this patent. And he had a bared responsibility. If there are perceived ambiguities, it would have been nice if he had said all the way through. Every time he said signal processing, he said digital signal processing. He most probably would not be here today. But he didn't. And that's, they say, what makes lawsuits and appeals. We believe that the judge responded in a right. She had a claim of construction right. Summary judgment was correctly granted. And this case should be affirmed. I'm not answering any of the questions the court began. Thank you, Mr. Maddy. If I recall, you have 30 seconds or so remaining. You don't want to mock, Your Honor. Quickly, I would ask you to look at the claim differentiation. Claim 7 and 25 were digitally added as a dependent claim to claims 1 and 20. And as to what a reasonable competitor would find unequivocal, I ask you to look at the defendant's own expert's testimony in the record of 1025 through 1027, as well as the plaintiff's expert at 884 and 1108 through 1109. Thank you, Your Honor. Thank you very much, Mr. Goldman. Our next drawing is German v. Department of Transportation.